UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

COSMO CAMPODONICO,

                              Plaintiff,                      **DECISION AND ORDER**

              -against-                            18-cv-8606 (AEK)

WAL-MART STORES EAST, LP,

                              Defendant.

--------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

       Plaintiff Cosmo Campodonico commenced this action against Defendant Wal-Mart

Stores East, LP ("Wal-Mart") to recover damages resulting from personal injuries that he

sustained while shopping in a Wal-Mart store located in Suffern, New York.  After a four-day

trial from August 2, 2022 through August 5, 2022, the jury returned a verdict that found Wal-

Mart 49 percent liable for the accident at issue and awarded damages to Plaintiff.  Currently

before the Court is Defendant's motion for judgment as a matter of law or for a new trial

pursuant to Rule 50(b) and Rule 59(a) of the Federal Rules of Civil Procedure.  ECF Nos. 104

(Notice of Motion), 105 (Memorandum of Law or "Def.'s Mem.").  For the reasons set forth

below, Defendant's motion is DENIED.

**BACKGROUND**

### A.    Trial Evidence

       Plaintiff's case-in-chief consisted of six witnesses: Plaintiff; Plaintiff's wife, Shari

Campodonico; current and former Wal-Mart employees Samuel Pierre-Philippe, Dede Pietkun,

and Touraine Jones; and Plaintiff's medical expert, Dr. Joseph Bosco.  Defendant presented a

single witness: medical expert Dr. Scott Haig.  The following is a summary of the trial evidence

that is relevant for purposes of deciding Defendant's motion.

> 1.        **The Campodonicos**

Plaintiff testified that on August 23, 2016, he and his wife went to a Wal-Mart Store

located in Suffern, New York for the purpose of purchasing two bicycles.  Trial Transcript

("Tr.") 67:15-17.  Plaintiff had owned bicycles previously, but wanted a bicycle with "mountain

tires for better grip."  Tr. 68:6-20.  Plaintiff began riding bicycles when he was 16, and has

owned motorcycles as well.  Tr. 68:18-24.  Upon arriving at the store, Plaintiff asked a Wal-Mart

associate where the bicycles were located, and the Campodonicos were directed to the back of

the store.  Tr. 69:14-22.  After determining that the bicycles in the back of the store were not

what they were looking for, Mrs. Campodonico asked another Wal-Mart associate where they

could find other bicycles, and the Campodonicos were directed to the "garden center" area of the

store.  Tr. 71:4-16.

In the garden center, Plaintiff observed "not a whole lot of anything but bicycles."  Tr.

72:13-22.  The bicycles were arranged "like soldiers" in either three or four rows.  Tr. 73:8-15.

The rows were approximately 30 feet long with between four and five feet of space separating

each row.  Tr. 74:14-18.  Plaintiff estimated that there were fewer than sixty bicycles in the

garden center.  Tr. 74:2-3.  None of the bicycles were chained, and they were standing up on kick

stands.  Tr. 75:19-22.

Mrs. Campodonico selected a bicycle right away and told Plaintiff to pick one for

himself.  Tr. 74:19-24.  Plaintiff then grabbed a red bicycle, took it "out of the formation," and

rode it for "maybe 20 feet" before he "crashed."  Tr. 77:6-18.  According to Plaintiff, before he

crashed, he started screaming at Mrs. Campodonico because he had "no brakes."  Tr. 79:12-16.

Plaintiff testified:

> I took my – I just took the hand – the brake, the mechanism into my hands and I squeezed them.  Actually, I squeezed the right one first, and then I also – and I realized I wasn't stopping and I grabbed the front one and then I crashed.

Tr. 79:20-80:1.  Mrs. Campodonico observed Plaintiff climb onto the bicycle and start to

pedal, and saw him ride for "20, maybe 25 feet."  Tr. 177:16-20, 178:11-16.  She testified

that after that:

> I just saw that all of a sudden I saw the bicycle veering and then I see him grabbing for the brakes because he was at the end of the row, so he had to make a right-hand turn, and then he, at the exact same time, I heard like a screeching sound and it was his voice and I saw, you know – said he was trying to get the brakes, and next thing I know he's just on the ground.

Tr. 178:19-179:2.  Mrs. Campodonico observed that when Plaintiff crashed, "at least 20 to 30

[bicycles] all came down."  Tr. 179:18-23.  After Plaintiff fell, Mrs. Campodonico ran to him

and saw that his right arm was stuck in the spokes of another bicycle.  Tr. 180:1-12.  Mrs.

Campodonico attempted to pull the other bicycles off of Plaintiff, and after a few minutes a Wal-

Mart associate came to her assistance.  *See* Tr. 180:13-181:12; *see also* Tr. 83:1-8.  After

assisting the Campodonicos, the Wal-Mart employee left the garden center and returned to the

main store.  Tr. 196:3-11; *see also* Tr. 83:1-17 (Plaintiff testified that after assisting him, the

Wal-Mart employee "bolted away").  Mrs. Campodonico then selected a different bicycle for

Plaintiff and walked towards the registers to purchase the bicycles.  Tr. 196:12-25; *see also* Tr.

83:23-84:16.  After the Campodonicos purchased the bicycles, Mrs. Campodonico wheeled the

bicycles to Plaintiff's truck, and Plaintiff used his left arm to assist Mrs. Campodonico to load

the bicycles into the truck.  Tr. 197:20-198:3; *see* Pl.'s Ex. 5 (receipt of purchase).

Mrs. Campodonico testified that at approximately 7:30 p.m. the following evening, she

called the Suffern Wal-Mart store to report her husband's accident and eventually spoke with an

individual who identified herself as "Dede."[1]  Tr. 200:18-202:19.  After this conversation, Mrs. Campodonico did not have any further contact with the Suffern Wal-Mart store about the accident.  Tr. 205:2-14.

Plaintiff testified that prior to the fall, he had no prior right shoulder injury and never had any complaints about his right shoulder.  Tr. 105:6-13.

### 2.      The Wal-Mart Employees

Samuel Pierre-Philippe was a current Wal-Mart employee as of the date of his trial testimony, and testified with the assistance of a Haitian-Creole interpreter.  *See* Tr. 232:14-234:23, 238:2-5.  Between 2008 and 2016, Mr. Pierre-Philippe worked in the maintenance department of the Suffern Wal-Mart store, and for a period in 2016, he temporarily held a position that required him to assemble bicycles.  Tr. 239:22-240:5.  Mr. Pierre-Philippe testified that he could not recall exactly when he worked as a bike assembler in 2016.  Tr. 240:1-243:2. He did not receive any formal training as to how to assemble bicycles, but learned by observing another employee.  Tr. 243:25-244:9.  Additionally, Mr. Pierre-Philippe testified that he "used to do this in [his] country."  Tr. 244:5-9.  As an assembler, Mr. Pierre-Philippe was not responsible for assembling the brakes—bicycles would arrive at the store with the brakes already installed. Tr. 269:11-270:1.  But he also testified that after assembling a bicycle, he would always test the wheels and brakes before putting it out for sale.  Tr. 247:9-25, 273:11-18.  Next, according to Mr. Pierre-Philippe, "the bikes, after you put them together, you put a chain around them.  You

---

[1] Plaintiff also submitted into evidence a phone record showing that on August 24, 2016 at 7:30 p.m., Mrs. Campodonico placed a phone call to the Suffern Wal-Mart that lasted for 12 minutes.  Pl.'s Ex. 1; *see also* Tr. 61:12-14 (stipulation as to the phone number of the Suffern Wal-Mart store).

pass the chain and you lock them together.  When the customer needs them, you would unlock them."  Tr. 264:10-17.

Dede Pietkun was an assistant store manager at the Suffern Wal-Mart store in August 2016, though by the time she testified at trial, she was no longer a Wal-Mart employee.  Tr. 281:23-282:25.  Ms. Pietkun testified that if someone who injured himself or herself in a Wal-Mart store called that store, he or she would be referred to the assistant store manager on duty to report the incident.  Tr. 285:7-14.  Ms. Pietkun also testified that the first time she was made aware of the August 23, 2016 accident was in October 2016 when she was contacted by "CMI"—a "reporting system that [Wal-Mart] use[s] to report accidents."  Tr. 288:12-25, 303:14-21.  In addition, Ms. Pietkun testified that during the time that she was employed by Wal-Mart, there were no other managers named "Dede" who worked at the Suffern Wal-Mart store.  Tr. 295:3-5.

Touraine Jones was employed as a manager of the Suffern Wal-Mart store between 2015 and 2017, though by the time she testified at trial, she also was no longer a Wal-Mart employee.  Tr. 310:3-20.  Ms. Jones testified that it was store policy to keep bicycles chained "[o]nce they're finished building and set up" because "kids tend to play with the bikes a lot."  Tr. 319:11-16.  Ms. Jones further testified that in addition to Wal-Mart employees, Wal-Mart engaged outside contractors to assist in assembling bicycles.  Tr. 320:14-17.  Ms. Jones also testified that it was the responsibility of Wal-Mart employees to check the assembled bicycles—including the brakes—to be sure they were assembled correctly.  *See* Tr. 320:18-24 ("Once the bike assemblers are done assembling, they would kind of test the brake, look at the chain, they probably move the pedal with their hand around to make sure everything is going correctly and if the seat is on properly and then they put them away."), 321:8-21.

3.     **The Medical Experts**

Dr. Bosco is an orthopedic surgeon associated with NYU Langone School of Medicine and was one of Plaintiff's treating surgeons.  *See* Tr. 358:12-20, 360:10-13.  Dr. Bosco opined, based on his examination of Plaintiff and his review of Plaintiff's medical records, that Plaintiff suffered from an acute massive rotator cuff tear that was caused by the August 23, 2016 accident. Tr. 371:10-20, 377:4-23.

Upon examination of Plaintiff in September 2016, Dr. Bosco did not observe any atrophy in Plaintiff's shoulder, which Dr. Bosco testified was significant because "people with long-standing rotator cuff tears can have visible atrophy of the infraspinatus muscle, muscle in the back of the shoulder."  Tr. 364:11-15, 366:6-16.  Moreover, Dr. Bosco testified that chronic tears are identifiable because in those cases:

> the rotator cuff itself, the tendons, don't have a great blood supply and the blood supply is worse where they attach, very closely to attaching to the bone.  So chronic, old tears tended to sort of melt away . . . when they attach to the bone, there's not a lot of inflammation.  You don't see a lot of tendon substance because it just melts away because there's no blood supply.

Tr. 382:19-383:3.  But according to Dr. Bosco, Plaintiff's presentation "was far different from that."  *Id.*  Dr. Bosco also testified that although a study from the early 1990s found that "people with big bone spurs have a higher risk of developing degenerative rotator cuff tears," that theory has "been really debunked since then" and "[w]e think that degenerative tears, nontraumatic tears are caused by a lack of blood supply to the articular side of a rotator cuff not by a bone spur digging into it."  Tr. 388:13-389:3.

Dr. Bosco further testified that a November 2016 x-ray of Plaintiff's shoulder revealed that Plaintiff had osteoarthritis in the right glenohumeral joint and sternal clavicular joint, which Dr. Bosco characterized as a degenerative condition.  Tr. 424:25-426:3.  Dr. Bosco also observed

degenerative changes in Plaintiff's acromioclavicular joint and labrum.  Tr. 426:6-15; *see also*

Tr. 368:6-15 (discussing the "acromioclavicular joint or AC joint").

   After examining Plaintiff, reviewing an MRI of his shoulder, and reviewing Plaintiff's

medical records, Dr. Bosco recommended that Plaintiff undergo an arthroscopic rotator cuff

repair, which would involve "sew[ing] the tendon back down to the bone."  Tr. 378:14-379:3.

On November 1, 2016, Dr. Bosco attempted to repair Plaintiff's shoulder using this method;

upon beginning the surgery, however, Dr. Bosco found that "the remaining part of [Plaintiff's]

tendons was shredded," such that he "could not really put sutures through it" in a manner that

would be likely to heal.  Tr. 381:8-22; *see* Pl.'s Ex. 10 (NYU Langone medical records).

Thereafter, Dr. Bosco referred Plaintiff to his colleague, Dr. Young Kwon, to perform a reverse

total shoulder arthroplasty, which is a type of shoulder replacement surgery.  Tr. 390:10-391:13,

393:15-394:18; *see* Pl.'s Ex. 10.  Plaintiff underwent the reverse total shoulder arthroplasty on

December 15, 2016.[2]  Pl.'s Ex. 10.

   Dr. Haig, an orthopedic surgeon in full-time private practice, reviewed Plaintiff's medical

records and opined that Plaintiff suffered from a "chronic tear" to his rotator cuff that likely

existed for "at least five years" prior to Plaintiff's 2016 medical treatment.  Dr. Haig Transcript

---

[2] Approximately two and a half years after the surgery, Plaintiff returned to NYU
Langone complaining of instability in his shoulder.  Tr. 397:10-15.  Dr. Kwon performed a
revision of the shoulder and did a work-up for infection.  Tr. 397:16-398:2.  This resulted in Dr.
Kwon discovering that the shoulder had become infected, and on June 27, 2019, Dr. Kwon
performed another surgery to remove the shoulder replacement.  Tr. 398:19-399:2.  After lab
tests showed that Plaintiff's shoulder infection had been eradicated, on September 19, 2019, Dr.
Kwon operated again, performing a second reverse total shoulder replacement.  Tr. 398:16-
400:15.

("Haig Tr.") 7:4-8, 59:7-60:6; *see also id.* at 196:8-17.[3]  Dr. Haig based this opinion on his

observation, from his review of Plaintiff's medical records, that "[t]he tear was retracted and the

muscles [were] atrophied."  *Id.* at 134:18-23.  Regarding Dr. Bosco's unsuccessful attempt to

repair Plaintiff's tendon on November 1, 2016, Dr. Haig testified that "[t]he only reason for the

rotator cuff not to be repairable at that point is because it has been torn for a long time; at least

five years, and that proves that this is a chronic tear."  *Id.* at 59:7-60:6.  Dr. Haig further testified

that "almost by definition, an acute tear can be repaired."  *Id.* at 171:12-24.  He also opined that

Plaintiff's injuries were caused by a large spur on top of his rotator cuff.  *Id.* at 67:12-68:9.  In

conclusion, Dr. Haig stated:

> [C]ommon sense says that when a 65-year-old man falls off a bicycle that he could
> be hurt somehow, and that those injuries may be so subtle as to be undetectable,
> and the human body is very complicated and it's hard to know.  But, in terms of the
> shoulder and the mechanics that I deal with professionally, it's clear to me that the
> injuries that we see in this shoulder are not injuries; they're degenerative conditions
> of a longstanding nature.

*Id.* at 197:2-24.  Dr. Haig also opined that Plaintiff would have "no function" in his shoulder for

the rest of his life, meaning he "[w]on't be able to raise his arm up."  *Id.* at 202:5-13.

---

[3] Based on the agreement of the parties and with the approval of the Court, Dr. Haig's testimony was pre-recorded on June 9, 2022 and was then presented at trial via video.  The Court ruled on the parties' various objections at a final pretrial conference that took place on August 1, 2022, which allowed the video to be played for the jury without interruption.  The court reporter for the trial did not transcribe the pre-recorded video testimony as it was being played in the courtroom; rather, the official written record of Dr. Haig's testimony is the transcription of the testimony that was prepared contemporaneously by a different court reporter on June 9, 2022, and then redacted by the parties following the August 1, 2022 final pretrial conference to conceal the portions of the transcript where the Court sustained objections.  The redacted June 9, 2022 transcript was marked as Court Exhibit 1 and incorporated into the trial record.  *See* Tr. 336:4-337:5, 567:17-25.  The page citations for Dr. Haig's testimony refer specifically to Court Exhibit 1.

**B.      Rule 50(a) Motion and Instructions to the Jury**

**1.      Defendant's Rule 50(a) Motion**

Following the conclusion of Plaintiff's case, Defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, arguing that Plaintiff had failed to offer sufficient evidence for the jury to find Defendant liable for negligence.  *See* Tr. 439:7-442:11.  The Court reserved judgment on Defendant's motion and after the close of evidence, the case was submitted to the jury.  Tr. 442:13-21.

**2.      The Charging Conference and Jury Charge: the Premises and Causation**

Prior to the charging conference, Defendant argued that the jury should be instructed to review Plaintiff's claim through the lens of premises liability, and not given instructions regarding general negligence, as Plaintiff requested.  *See* ECF No. 89; *see also* ECF No. 88 (Plaintiff's pre-trial memorandum of law arguing that the jury should be charged using an "ordinary straight negligence" instruction).  The Court agreed with Defendant, and provided the parties with proposed jury instructions and a proposed verdict form for review on the evening of August 4, 2022.  *See* Tr. 438:2-22.  The Court held a charging conference the following morning, which took place before the jury heard closing arguments from counsel.  Tr. 449:5-474:18.  At the charging conference, neither party objected to the Court's proposed explanation of the "premises" in this case.  *Id.*  The Court thereafter provided the following instructions to the jury regarding premises liability, prior to instructing the jury concerning the elements of Plaintiff's claim:

The plaintiff claims that the premises were not in a reasonably safe condition because a bicycle that was placed out for sale at the Wal-Mart store had no brakes or defective brakes.  The defendant contends that the bicycle in question had functional brakes and that the plaintiff was the sole cause of the accident.  If you decide that the premises were reasonably safe, you will find for the defendant and proceed no further.  If you decide that the premises were not reasonably safe, you will proceed to consider whether the defendant was negligent in permitting the unsafe condition to exist.

Tr. 551:16-552:1.

During the charging conference, Defendant argued that the medical evidence presented at trial raised a question of whether certain of Plaintiff's injuries pre-existed the August 23, 2016 accident.  Tr. 460:5-25.  Defendant requested that the jury be instructed that, "if you find that any injury was an aggravation, you will find for the defendant because plaintiff did not plead this as an aggravation."  Tr. 461:1-10.  Defendant objected.  Tr. 461:24-462:15.  The Court declined to instruct the jury with the specific language proposed by Defendant, but agreed to add a question to the verdict form asking, "was the negligence of the defendant a substantial factor in producing the injury?"  Tr. 464:20-465:2, 469:18-470:8; *see also* Tr. 577:8-10.  With respect to causation, the jury was instructed:

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury.  That is, if it had such an effect in producing the injury, that reasonable people would regard it as the cause of the injury.

There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial.  You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Tr. 550:16-24.  The Court further charged:

> If you find that the defendant was negligent, you must next consider whether that negligence was a substantial factor in causing the plaintiff's injury.  An act or a failure to act is a substantial factor in bringing about an injury if a reasonable person would regard it as a cause of the injury.  If you find that the defendant's negligence was not a substantial factor in causing the injury, then the plaintiff may not recover damages.  If you find that the defendant's negligence was a substantial factor in causing the plaintiff's injury, you will proceed to consider comparative fault.

Tr. 554:12-21.

After the Court issued its instructions and the jury retired to deliberate, the jury sent the Court the following question: "What is the meaning of premise?  The bike?  The store?"  Tr. 568:5-7; *see* Tr. 568:8-10 (marking the note as Court Exhibit 2).  In a discussion with counsel outside the presence of the jury, the Court proposed the following answer: "The premises is the store, and the bike is part of the store."  Tr. 571:3-6.  Plaintiff's counsel did not object to the Court's proposed response.  Tr. 570:8-13.  Defendant's counsel noted his objection to the Court's proposed response; he indicated that he thought this response would "confuse it further, because then they're going to be starting to think, well well, what about the premises wasn't safe then, and then expanding it beyond the bike."  Tr. 571:3-10.  The Court rejected the only alternative proposed by Defendant's counsel.  Tr. 571:11-22.  The jury was brought into the courtroom, and the Court responded to the jury's question by stating that "the premises is the store and the bike is part of the store."  Tr. 573:7-13.

### 3.    The Jury Verdict

After completing deliberations, the jury returned a verdict finding that Defendant had created the unsafe condition at the Wal-Mart store on August 23, 2016, and that Defendant's negligence was a substantial factor in causing Plaintiff's injuries.  Tr. 574:7-575:13.  The jury further determined that Defendant was 49 percent responsible for causing the accident and that

Plaintiff was 51 percent responsible; the jury awarded a total of $3,000,000 in compensatory damages for his bodily injury and pain and suffering.[4]  Tr. 575:2-24.

    After the jury was discharged, the Court formally denied Defendant's Rule 50(a) motion, as to which the Court had reserved decision.  Tr. 580:19-581:23.

## C.    Post-Trial Procedural History

    Judgment was entered in favor of Plaintiff on September 13, 2022.  ECF No. 103.  In accordance with Rule 50(b) and 59(a) of the Federal Rules of Civil Procedure, Defendant filed its motion seeking judgment as a matter of law or a new trial within 28 days after entry of judgment, on October 7, 2022.  ECF Nos. 104-06.  Plaintiff submitted his opposition on November 27, 2022, ECF No. 111 ("Pl.'s Opp."), and Defendant filed its reply on December 12, 2022, ECF No. 112 ("Def.'s Reply").

## STANDARD OF REVIEW

## A.    Rule 50(b) Standard

    If a party believes that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for its adversary on a particular issue, it may move for judgment as a matter of law prior to the submission of the case to the jury pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, and may then renew the motion after trial, no later than 28 days after entry of judgment, pursuant to Rule 50(b).  *See* Fed. R. Civ. P. 50(a), 50(b).  "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."  Fed. R. Civ. P. 50(b).  "The posttrial motion is limited to those grounds that were specifically raised in the prior motion for

---

[4] In the Judgment issued by the Court, this figure was reduced based on the jury's comparative negligence findings.  *See* ECF No. 103.

[judgment as a matter of law]; the movant is not permitted to add new grounds after trial."
*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (cleaned up);
*accord Conte v. County of Nassau*, 596 F. App'x 1, 6 (2d Cir. 2014) (summary order).

### B.      Rule 59(a) Standard

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[t]he court may, on
motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for
any reason for which a new trial has heretofore been granted in an action at law in federal court."
Fed. R. Civ. P. 59(a)(1)(A).  Grounds for granting a new trial include a verdict that is against the
weight of the evidence, *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012),
substantial errors in the admission or exclusion of evidence, *Stampf v. Long Island R.R. Co.*, 761
F.3d 192, 202 (2d Cir. 2014), and non-harmless errors in jury instructions, *Velez v. City of New
York*, 730 F.3d 128, 134 (2d Cir. 2013), or verdict forms, *Armstrong ex rel. Armstrong v.
Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005).  "'It is well-settled' [ ]
'that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories,
securing a rehearing on the merits or otherwise taking 'a second bite at the apple.'"  *Guzman v.
Jay*, 303 F.R.D. 186, 192 (S.D.N.Y. 2014) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136,
144 (2d Cir. 1998)).

## DISCUSSION

Defendant argues that it is entitled to judgment as a matter of law, or in the alternative, a
new trial, because Plaintiff did not adduce sufficient evidence for the jury to find that it created a
dangerous condition that caused Plaintiff's injuries.  In addition, Defendant contends that it is
entitled to a new trial because the Court erred in excluding certain evidence, and made various

errors in its instructions to the jury and in the verdict form.  The Court addresses each argument

in turn.

### A.      Motion Based on Sufficiency of the Evidence

Defendant first argues that the jury's verdict must be set aside, or in the alternative, a new

trial must be ordered, because there was insufficient evidence to support the jury's verdict that

Defendant created a dangerous condition by placing a bicycle with defective brakes in the garden

center section of the Suffern Wal-Mart store on August 23, 2016.  Def.'s Mem. at 8-10, 11-13.

### 1.      Applicable Legal Standards

#### a.      Rule 50(b)

To prevail on a Rule 50 motion based on sufficiency of the evidence, the movant must

establish that the evidence is such that, "without weighing the credibility of the witnesses or

otherwise considering the weight of the evidence, there can be but one conclusion as to the

verdict that reasonable [persons] could have reached."  *Caruso v. Forslund*, 47 F.3d 27, 32 (2d

Cir. 1995) (quotation marks omitted) (alteration in original).  Judgment as a matter of law should

be granted only where:

> (1) there is such a complete absence of evidence supporting the verdict that the
> jury's findings could only have been the result of sheer surmise and conjecture, or
> (2) there is such an overwhelming amount of evidence in favor of the movant that
> reasonable and fair minded persons could not arrive at a verdict against it.

*Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004) (cleaned up).  "When

considering the evidence associated with a Rule 50(b) motion, the trial court may not 'weigh

evidence, assess credibility, or substitute its opinion of the facts for that of the jury,'" *Rosioreanu*

*v. City of New York*, 526 F. App'x 118, 119 (2d Cir. 2013) (summary order) (quoting *Vt.*

*Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 277 (2d Cir. 1996)), and must view the evidence "in the

light most favorable to the party against whom the motion was made," *Zellner v. Summerlin*, 494

F.3d 344, 371 (2d Cir. 2007).  Consequently, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id.* (quotation marks omitted).

### b.       Rule 59(a)

Pursuant to Rule 59(a), "[a] court may grant a new trial . . . if the verdict is against the weight of the evidence."  *Raedle*, 670 F.3d at 417.  "A decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice."  *Id*. at 417-18 (cleaned up); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (a Rule 59 motion should be granted only "when the jury's verdict is egregious" (quotation marks omitted)).  At the same time, a court may grant a new trial "even if there is substantial evidence to support the jury's verdict."  *Song v. Ives Lab'ys Inc*., 957 F.2d 1041, 1047 (2d Cir. 1992).  A court deciding a Rule 59(a) motion "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner."  *Raedle*, 670 F.3d at 418.  Nevertheless, the Second Circuit has cautioned that "trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury."  *Id.* (cleaned up).

### c.       New York Negligence Law

"To establish a *prima facie* case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury

proximately resulting therefrom.'"[5]  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)

(quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294-95 (N.Y. 1985)).

In the context of premises liability, "the plaintiff must show that there was a dangerous or

defective condition that caused the accident, and that the defendant either created the defective

condition, or had actual or constructive notice thereof."  *Moy*, 629 F. Supp. 3d at 209-10 (cleaned

up).  "'Where the defendant created the dangerous condition, actual notice is presumed.'"  *Lionel

v. Target Corp.*, 44 F. Supp. 3d 315, 319 n.4 (E.D.N.Y. 2014) (quoting *Rose v. Da Ecib USA*,

259 A.D.2d 258, 260 (1st Dep't 1999)).  "To establish that a defendant created a dangerous

condition or defect, a plaintiff must point to some affirmative act on the part of the defendant."

*Vasquez v. United States*, No. 14-cv-1510 (DF), 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15,

2016) (quotation marks omitted); *accord Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d

188, 192 (S.D.N.Y. 2004).

"[I]n New York, circumstantial evidence is sufficient to make out a *prima facie* case of

negligence if it supports an inference of causation or negligence, even it if does not rule out 'the

existence of remote possibilities that the injury was not caused by the defendant, or [that] the

defendant was not negligent.'"  *Olsen v. K Mart Corp.*, No. 04-cv-3648 (JMA), 2005 WL

2989546, at *5 (E.D.N.Y. Nov. 8, 2005) (quoting *Dillon v. Rockaway Beach Hosp. &

Dispensary*, 284 N.Y. 176, 179 (1940)).  "Although the plaintiff need not exclude every other

possible cause other than a defendant's breach of duty, the record must render the other possible

causes sufficiently remote to enable the trier of fact to reach a verdict based upon the logical

inferences to be drawn from the evidence, not upon speculation."  *Tango v. Costco Wholesale*

---

[5] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, New York law governs the substantive claims.  *Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209 n.6 (S.D.N.Y. 2022).

*Corp.*, No. 19-cv-483 (SJF) (ARL), 2021 WL 174013, at *5 (E.D.N.Y. Jan. 19, 2021) (quotation marks omitted).

### 2. Application

Plaintiff offered sufficient evidence for the jury to determine that Defendant created a dangerous condition by placing a bicycle with defective brakes in the garden center section of the Suffern Wal-Mart store on August 23, 2016.

At trial, Plaintiff presented testimony from the former manager of the Suffern Wal-Mart store that the bicycles that Defendant placed out for sale at the store were assembled in the store either by contractors or by Defendant's employees.  *See* Tr. 320:14-321:7.  Although the bicycles' brakes were not assembled at the store, Tr. 269:11-270:1, Ms. Jones testified that it was the responsibility of Wal-Mart employees to check the assembled bicycles—including the brakes—to be sure they were assembled correctly, *see* Tr. 320:18-24 ("Once the bike assemblers are done assembling, they would kind of test the brake, look at the chain, they probably move the pedal with their hand around to make sure everything is going correctly and if the seat is on properly and then they put them away."), 321:8-21.  Mr. Pierre-Philippe likewise testified that when he assembled bicycles, he would always test the wheels and brakes before putting them out for sale.  Tr. 247:9-25, 273:11-18.  Neither party presented any evidence to suggest that any bicycles would be present in the garden center without Defendant having placed them there, and the uncontroverted testimony from multiple witnesses was that the bicycles would not be placed anywhere in the store without having been checked by a Wal-Mart employee.  Further, Plaintiff, an experienced bicyclist, testified that while riding one of Defendant's bicycles, he attempted to stop by squeezing the brakes, but the bicycle did not stop.  Tr. 79:20-80:1.  Mrs. Campodonico likewise testified that she observed her husband reaching for the brakes of the bicycle that he was test riding, but that he was not able to stop the bicycle.  Tr. 178:19-179:2.  Together, the

evidence that Defendant's employees (or contractors hired by Defendant) assembled bicycles, Defendant's employees checked the bicycles (including the brakes) to make sure they were assembled properly, and Defendant's employees placed the bicycles in the garden center, combined with the testimony that Plaintiff observed that the bicycle he rode had inoperable brakes, permits an inference that Defendant placed a bicycle with defective brakes in the garden center. *See Khalil-Mirhom v. Kmart Corp.*, No. 12-cv-5512 (ARR) (VVP), 2014 WL 173415, at *5 (E.D.N.Y. Jan. 13, 2014) (denying summary judgment where jury could infer based on circumstantial evidence that a Kmart employee placed a "large wooden plank" in area of store where plaintiff tripped and fell over it).

Defendant argues that Plaintiff failed to rule out the possibility that another Wal-Mart customer was responsible for "tamper[ing] with the bicycle's brakes before [Plaintiff's] accident." Def.'s Reply at 4. But Plaintiff "need not exclude every other possible cause other than a defendant's breach of duty." *Tango*, 2021 WL 174013, at *5 (quotation marks omitted). Rather, he is only responsible for presenting evidence that "render[s] the other possible causes sufficiently remote to enable the trier of fact to reach a verdict based upon the logical inferences to be drawn from the evidence, not upon speculation." *Id.* (quotation marks omitted). The evidence here shows that Defendant's employees (and contractors hired by Defendant) assembled the bicycles, and Defendant's employees were responsible for checking the bicycles—including the brakes—before placing them out for sale. No one other than Defendant placed the bicycles on the floor of the garden center. Further, both Mr. Pierre-Philippe and Ms. Jones testified that generally, the bicycles in the garden center were chained—though the evidence at trial indicates that they were not chained on August 23, 2016—and customers who wished to try out the bicycles were generally required to request assistance to have them

unchained.  *See* Tr. 264:10-17, 319:11-16.  Moreover, while Defendant speculates in this motion about the possibility that other customers could have tampered with the bicycle's brakes—and counsel even offered this theory to the jury for consideration as part of closing arguments, *see* Tr. 485:21-25—this is simply not a case where such a scenario is "equally likely," *cf. Breitenbucher v. Wal-Mart Stores, Inc.*, No. 17-cv-6633 (RRM) (AYS), 2020 WL 2523046, at *4 (E.D.N.Y. May 18, 2020) (holding "no reasonable juror could find [defendant] affirmatively created a dangerous condition" where there was evidence "to support the equally likely alternative that a customer may have" created the hazard); *Burden v. Wal-Mart Stores East, LP*, No. 17-cv-1289 (KMK), 2018 WL 4680025, at *5 (S.D.N.Y. Sept. 28, 2018) (granting summary judgment to defendant where plaintiff alleged defendant created condition of dangerously stacked shampoo bottles, but it was just as likely that another customer had stacked the bottles); *Painchault v. Target Corp.*, No. 09-cv-1831 (NGG) (RML), 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) (granting summary judgment to defendant where "small puddle of liquid, apparently water, could have been caused by a customer, and nothing indicates that it was caused by a[n] . . . employee" of the defendant).

Defendant is also incorrect that Plaintiff failed to show that Defendant had notice regarding the bicycle at issue.  *See* Def.'s Mem. at 9-10, 11-13.  "'Where the defendant created the dangerous condition, actual notice is presumed.'"  *Lionel*, 44 F. Supp. 3d at 319 n.4 (quoting *Rose*, 686 N.Y.S.2d at 21); *accord Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 342 (E.D.N.Y. 2021); *Bogery v. United States*, No. 17-cv-6996 (VEC), 2018 WL 4265901, at *3 (S.D.N.Y. Sept. 6, 2018) ("a defendant has actual notice if it . . . created the condition"); *Berner v. 2061 A Bartow Food Corp.*, 279 A.D.2d 275 (1st Dep't 2001).  Defendant cites to *Nussbaum v. Metro-North Commuter Railroad*, 603 F. App'x 10 (2d Cir. 2015), to suggest that even a defendant that

creates a dangerous condition may not have knowledge of the danger presented by the condition that was created.  But *Nussbaum*—a summary order in which the Second Circuit, applying New York law, held that a defendant that applied a detergent to clean the floors of a train car could not be held liable for creating a dangerous slippery floor condition unless the plaintiff showed "that the defendant knew or had reason to know of the danger"—is inapposite.  *Id.* at 11-12.  In *Nussbaum*, even though there was no dispute that the defendant created the condition by applying detergent to the floor, the plaintiff failed to establish that the defendant had notice that it had created a *dangerous* slippery floor condition by applying the detergent, which was not applied negligently.  *Id.*  In contrast, based on the circumstantial evidence presented at trial here, it was reasonable for the jury conclude that Defendant created a dangerous condition by placing a bicycle with defective brakes on its sales floor.  And unlike in *Nussbaum*, there can be no plausible argument that Wal-Mart would not have had reason to believe that placing a bicycle with defective brakes in the garden center would present a dangerous condition.  Thus, the well-established principle—"[w]here the defendant created the dangerous condition, actual notice is presumed," *Lionel*, 44 F. Supp. 3d at 319 n.4 (quotation marks omitted)—is readily applicable here.

For all of these reasons, Defendant has failed to meet its burden under Rule 50(b) of showing "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . [that] there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it."  *Advance Pharm., Inc.*, 391 F.3d at 390.  Nor has Wal-Mart demonstrated pursuant to Rule 59(a) that the jury's verdict was "seriously erroneous" or "a miscarriage of justice."  *Raedle*, 670 F.3d at 417-18.

Accordingly, Defendant's motion for judgment as a matter of law, or in the alternative for a new trial, on this ground is DENIED.

### B.      Remaining Arguments for a New Trial

Defendant also moves pursuant to Rule 59(a) for a new trial based on three additional grounds: (1) the Court's pre-trial ruling to exclude certain evidence, (2) a jury interrogatory and the Court's related instruction to the jury regarding the premises at issue in this case, and (3) a jury interrogatory regarding proximate cause.  Def.'s Mem. at 10-11, 13-16.

### 1.      The Court's Prior Rulings Excluding "Claims Run" and "Lawsuit Run" Documents

Defendant maintains that the Court improperly excluded evidence, and argues—now for the third time—that it should have been allowed to present evidence that "no defectively assembled bicycles were complained about or sold after [P]laintiff left a purportedly defective bike on Walmart's sales floor."  *Id.* at 10-11.

Rule 403 of the Federal Rules of Evidence makes clear that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury . . . ."  Fed. R. Evid. 403.  Moreover, a district court has broad discretion over the admission of evidence at trial. *See Stampf*, 761 F.3d at 203.  Nevertheless, "[a] new trial may be warranted if the district court made substantial errors in admitting or excluding evidence, provided that the errors caused the jury to reach a seriously erroneous result or its verdict is a miscarriage of justice."  *Graham v. City of New York*, 128 F. Supp. 3d 681, 704-05 (E.D.N.Y. 2015) (citing *Stampf*, 761 F.3d at 203).

Prior to trial, Defendant moved *in limine* seeking an order allowing it to introduce "Claims Run" and "Lawsuit Run" documents—business records that would have shown that no claims had been submitted to Wal-Mart regarding any bicycles purchased at the Suffern store

between August 22, 2016 and February 23, 2017, and that no lawsuits (other than this case) were

filed between 2016 and 2019 arising out of the assembly of a bicycle sold at any New York Wal-

Mart store.  Defendants sought to use this evidence to support the theory that there was never any

bicycle at the Suffern Wal-Mart store that had the brake defect that Plaintiff alleges led to his

accident and injuries.  *See* ECF Nos. 32, 34 (Defendant's July 2020 motion *in limine* regarding

this evidence).  In a July 27, 2020 decision, Magistrate Judge Lisa Margaret Smith—who was

presiding over this matter at that time—denied Defendant's motion based on a finding that the

evidence Defendant sought to introduce would be more prejudicial than probative under Rule

403.  *See* ECF No. 35.  Magistrate Judge Smith reasoned that there were numerous other

potential explanations for why a defective bicycle could have existed and been used by Plaintiff

but would never have generated any further claims or lawsuits against Defendant, and that

introducing this evidence would do no more than create confusion and invite speculation from

the jury.  *See id.*  After this matter was reassigned to this Court following Magistrate Judge

Smith's retirement, Defendant effectively sought reconsideration of Magistrate Judge Smith's

decision on the motion *in limine*, and for similar reasons as those originally articulated by

Magistrate Judge Smith—including (i) "the very real possibility that jurors could interpret this

evidence as generalized proof of non-negligent behavior by Wal-Mart without appropriate

connection to the allegations and circumstances of this particular case"; (ii) "the inevitable

introduction of multiple layers of speculative testimony"; and (iii) the risk of creating "a

sideshow involving documents that are susceptible to many different reasonable

interpretations"—this Court denied Defendant's request for reconsideration.  ECF No. 65 at 3-4.

　　　　Neither Defendant's renewed arguments nor the evidence presented at trial persuade this

Court to revisit these prior rulings.  Indeed, the trial evidence further supports the Court's prior

conclusion that the introduction of the "Claims Run" and "Lawsuit Run" documents would have

risked significant jury confusion, and any inferences the jury might have made based on these

documents would have required pure speculation.  First, there is no evidence whatsoever about

what happened to the bicycle after Plaintiff fell.  Plaintiff and Mrs. Campodonico testified that

after the crash, they were assisted by a Wal-Mart associate.  *See* Tr. 83:1-8, 180:13-181:12.

Plaintiff testified that the Wal-Mart associate helped Mrs. Campodonico to "g[e]t the bicycles

off" of him and to "g[e]t [him] to stand up," but that once he was up, the Wal-Mart associate

"bolted away."  Tr. 83:1-84:17.  After Plaintiff was off the ground, Plaintiff and Mrs.

Campodonico also left the garden center area to purchase their bicycles, and then exited the

store.  Tr. 83:23-84:16, 196:12-198:3.  There is no evidence about what happened in the garden

center after Plaintiff left.  The logic necessarily underlying Defendant's interest in using the

"Claims Run" and "Lawsuit Run" documents is that the absence of any further claims or lawsuits

demonstrates that there never was a defective bicycle at the Suffern Wal-Mart.  Defendant's

theory is that the bicycle that Plaintiff left behind in the garden center would have been re-

stocked without any alteration to the brakes, and that if there genuinely had been a defect with

the brakes, another customer then would have had a problem that would have been reported.  Yet

it is just as likely—if not more likely—based on the evidence presented at trial that the Wal-Mart

associate who "bolted away" from the scene of the accident returned a short time later, removed

the defective bicycle from the floor, ensured that it was repaired or destroyed, and thereby

prevented any further harm to any other customers from the defective item.

　　Moreover, the evidence certainly permits an inference that just because Defendant does

not have a record of a complaint, that does not mean that no complaint was ever made.  Mrs.

Campodonico testified that days after the accident, she contacted Wal-Mart and lodged a

complaint with a Wal-Mart assistant manager named "Dede."  Tr. 200:18-201:3, 202:3-19.

Plaintiff's phone records show that on August 24, 2016 at 7:30 p.m., Mrs. Campodonico placed a

12-minute phone call to the Suffern Wal-Mart.  Pl.'s Ex. 1; *see also* Tr. 61:12-14 (stipulation as

to the phone number of the Suffern Wal-Mart).  But neither party was able to present any

documentary evidence that Defendant received a complaint on that date, and Dede Pietkun, who

in 2016 was the only assistant store manager named "Dede" at the Suffern Wal-Mart, testified

that she was not made aware of the August 2016 accident until October, when she was contacted

by CMI.  Tr. 288:12-25, 295:3-5, 303:14-21.  Adding the "Claims Run" document to this already

wholly contradictory—and completely ancillary—testimony could only have sidetracked,

confused, and misled the jury in ways that would not have been germane to the resolution of the

core issues in dispute.  *See In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL

8578945, at *7 (S.D.N.Y. Dec. 9, 2015) (excluding evidence pursuant to Rule 403 based on "the

dangers of unfair prejudice, misleading and confusing the jury, and wasting time" because "[t]he

evidence could easily lead the jury to speculate – with no evidentiary basis – about whether the

medication impaired [p]laintiff's driving abilities" in a case involving an automobile accident).

At bottom, Defendant's argument regarding the Claims Run and Lawsuit Run documents

at this stage amounts to nothing more than an attempt to take a "second [or third] bite at the

apple," which is not a proper use of Rule 59.  *See Sequa Corp.*, 156 F.3d at 144.  Accordingly,

and because the Court finds no substantial error in the two prior determinations to exclude the

Claims Run and Lawsuit Run documents, Defendant's motion for a new trial based on this issue

is DENIED.  *See Stampf*, 761 F.3d at 202.

## 2.    Verdict Form

Defendant's next set of arguments involves the verdict form.  *See* Def.'s Mem. at 13-16.

When considering a motion for a new trial based on an alleged error in the interrogatories posed

to the jury in a special verdict form, the court must determine if the interrogatories, when read in conjunction with the jury charge, fairly and accurately framed the issues to be decided. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *see also Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) ("The court's special verdict questions must be read in conjunction with the judge's charge to the jury."). A new trial should only be granted if the special interrogatories served to "mislead and confuse the jury" or "inaccurately frame[d] the issues to be resolved." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981).

### a.    Jury Interrogatory Regarding the Premises

Defendant contends that the Court erred by including an overbroad interrogatory on the verdict form that permitted the jury to find that Defendant's store was unsafe "for reasons having nothing to do with the bicycle or the brakes on the bicycle." Def.'s Mem. at 13-14. The Court disagrees.

The relevant question on the special verdict form read as follows: "Was the Defendant's premises—the Wal-Mart store—reasonably safe on August 23, 2016?" *See* Tr. 574:7-9. At the charging conference, neither party objected to this question. *See* Tr. 454:24-455:7, 456:20-457:10. The Court's instructions to the jury made clear that Plaintiff's claim was specifically concerned with the bicycle that Plaintiff alleged caused his accident, and in particular whether the brakes on that bicycle were functional. In the section of the instructions concerning premises liability, the Court stated the following:

> The plaintiff claims that the premises were not in a reasonably safe condition because a bicycle that was placed out for sale at the Wal-Mart store had no brakes or defective brakes. The defendant contends that the bicycle in question had functional brakes and that the plaintiff was the sole cause of the accident. If you decide that the premises were reasonably safe, you will find for the defendant and proceed no further. If you decide that the premises were not reasonably safe, you will proceed to consider whether the defendant was negligent in permitting the unsafe condition to exist.

25

Tr. 551:16-552:1.  Plainly, the focus of this instruction was whether "a bicycle that was placed out for sale at the Wal-Mart store had no brakes or defective brakes," or instead "had functional breaks, and . . . [P]laintiff was the sole cause of the accident."  *See id.*  The jury charge was not only delivered orally to the jury, but paper copies of the jury charge were sent back to the jury room for the jurors to use, if they wanted, during their deliberations.[6]  Tr. 534:3-6, 566:8-9.

After the case was submitted to the jury, the jury sent a question asking, "What is the meaning of premise?  The bike?  The store?"  Tr. 568:5-7.  After consulting with counsel, the Court responded to the jury that "the premises is the store and the bike is part of the store."  Tr. 573:7-13.  This explanation is consistent with the jury charge, which directed the jury to focus on the question of whether Plaintiff proved that he rode a bike with "no brakes or defective brakes" or instead that the bicycle "had functional breaks, and . . . [P]laintiff was the sole cause of the accident."  Reading the interrogatory together with the jury charge and the Court's additional instruction, *see Romano*, 998 F.2d at 105, the Court has no basis to conclude that the jury could have found Defendant liable based on some other dangerous condition at the Suffern Wal-Mart store separate and apart from the bicycle at issue in this matter.

Because there is no reason to believe that the first question on the verdict form and the corresponding jury instruction misled or confused the jury or inaccurately framed the issues to be

---

[6] To the extent that Defendant is now arguing that it was incorrect to charge premises liability, that argument is undercut by Defendant's own pre-trial motion, in which Defendant argued the New York Pattern Jury Instruction concerning "possessor's liability for condition or use of premises"—PJI 2:90—"is applicable to this matter."  *See* ECF No. 89; ECF No. 81 at ECF pg. 49.  Indeed, the key part of the instruction that the Court provided to the jury regarding the premises, *see* Tr. 551:16-552:1 (and excerpted here), closely tracked the language that Defendant requested on this point, *see* ECF No. 89; ECF No. 81 at ECF pg. 49.

resolved, Defendant's motion for a new trial on this basis is DENIED.  *See Cann*, 658 F.2d at 58.[7]

### b.  Jury Interrogatory Regarding Causation

Defendant's final argument is that the Court erred by declining to submit to the jury an interrogatory specifically as to whether Plaintiff's injury was an aggravation of a pre-existing condition, *see* Tr. 461:1-10, and in doing so left open the possibility that the jury improperly based its verdict on a finding that Plaintiff had pre-existing injuries that were aggravated when he fell in the Wal-Mart store, Def.'s Mem. at 14-16.

---

[7] In a two-sentence argument tacked on to the section of Defendant's memorandum of law regarding the "premises" interrogatory, *see* Def.'s Mem. at 14, Defendant also raises a question as to the sufficiency of the evidence regarding whether a defect in the brakes of the bicycle was the proximate cause of the accident.  According to Defendant, "as it pertains to [P]laintiff's ability to stop the bike, the [P]laintiff testified that when he went to apply the brakes it was already too late to avoid the accident" and "[b]y the [P]laintiff's own admission, therefore, he was unable to establish that any alleged defect with the brakes was the proximate cause of the accident."  Def.'s Mem. at 14; *see also* Def.'s Reply at 10; Tr. 138:14-16.  But Plaintiff's testimony on this subject is not as clear as Defendant represents; within the same line of questioning highlighted by Defendant—indeed, in response to the very next question—Plaintiff testified that "[i]f [he] had brakes, [he] could have prevented [the accident]."  Tr. 138:17-19.  And further, Defendant made this exact argument in his summation to the jury.  *See* Tr. 481:1-16 ("If you believe, as I think you must, that based Mr. Campodonico's testimony alone that when he went to apply the brakes, it was already too late, it was too late to avoid the accident, th[en] you find the premises reasonably safe.");  *see also* Tr. 477:22-478:4, 479:17-22.  The jury, however, rejected Defendant's assessment of the evidence, and found both that Defendant's premises were not reasonably safe and that Defendant's negligence proximately caused Plaintiff's injuries.  The conflicting and ambiguous nature of the testimony on this point lends itself to multiple possible interpretations, and does not provide a basis to set aside the jury's findings, either pursuant to Rule 50(b) or Rule 59(a).

Under New York law, "aggravation of a pre-existing condition is an element of special damages which must be specially pleaded and proven before recovery therefor can be allowed."[8] *Behan v. Data Probe Int'l, Inc.*, 213 A.D.2d 439, 440 (2d Dep't 1995). Plaintiff clearly and expressly decided not to plead that his injuries were the result of aggravation of a pre-existing condition, and he made clear at various junctures in this litigation that his claim was that all of his injuries were acutely caused by Defendant's negligence. *See, e.g.*, Tr. 57:3-7, 463:7-14.

The Court thus instructed that to find Defendant liable, the jury must determine that Defendant's negligence was the proximate cause of Plaintiff's injuries. Under New York law, to find that the August 23, 2016 accident proximately caused Plaintiff's injuries, the jury was required to find that the accident was a "'substantial factor in bringing about the injury.'" *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. June 4, 2020) (quoting *Schneider v. Diallo*, 14 A.D.3d 445 (1st Dep't 2005)); *accord Brennan v. Gormley*, 181 A.D.3d 552, 553 (2d Dep't 2020); *Frometa v. Diaz-Diaz*, No. 07-cv-6372 (HB), 2008 WL 5210345, at *4 (S.D.N.Y. Dec. 11, 2008) ("There may be one, or more than one, substantial factor."). Accordingly, at trial, the jury was instructed:

> An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury. That is, if it had such an effect in producing the injury, that reasonable people would regard it as the cause of the injury.
>
> There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Tr. 550:16-24. The Court further charged:

---

[8] Plaintiff does not dispute that New York law governs this issue. *See* Pl.'s Opp. at 13-14; *but see Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir. 1999) (*per curiam*) (questioning whether "the law defining damages as general or special is procedural" and discussing, without deciding, whether such questions are governed by federal or state law in diversity actions).

> If you find that the defendant was negligent, you must next consider whether that
> negligence was a substantial factor in causing the plaintiff's injury. An act or a
> failure to act is a substantial factor in bringing about an injury if a reasonable person
> would regard it as a cause of the injury. If you find that the defendant's negligence
> was not a substantial factor in causing the injury, then the plaintiff may not recover
> damages. If you find that the defendant's negligence was a substantial factor in
> causing the plaintiff's injury, you will proceed to consider comparative fault.

Tr. 554:12-21.

On the issue of causation, the parties' medical experts reached opposite conclusions as to

whether Plaintiff's injury was acutely caused by the accident or whether it was a chronic

condition unrelated to the accident. Dr. Bosco testified that it was his opinion that Plaintiff's

shoulder injuries were acute, and not chronic, and were caused by the August 23, 2016 accident.

Tr. 371:10-20, 377:4-23. In support of this opinion, Dr. Bosco explained that he did not observe

any visible atrophy of Plaintiff's shoulder muscles. Tr. 364:11-15, 366:6-16. He further testified

that chronic tears are characterized by tendons that have "sort of melt[ed] away" because there is

"blood supply," and that Plaintiff did not present with those characteristics. Tr. 382:19-383:3.

Dr. Bosco also ruled out the possibility that Plaintiff's shoulder injury was caused by a bone

spur, and explained that a study from the early 1990s linking bone spurs and degenerative rotator

cuff tears has since "been debunked." Tr. 388:13-389:3.

Dr. Haig—who did not examine Plaintiff and based his opinion entirely on a review of

Plaintiff's medical records—disagreed. He opined that Plaintiff suffered from a "chronic tear" to

his rotator cuff that likely existed for "at least five years." Haig Tr. 59:7-60:6. Dr. Haig also

testified that Plaintiff's injuries were caused by a large spur on top of his rotator cuff, *id.* 67:12-

68:9, and that if Plaintiff's injuries had been acute, then "by definition," Dr. Bosco would have

been able to repair the tear through surgery, *id.* 171:12-24. According to Dr. Haig, it was "clear"

that Plaintiff did not suffer from "injuries," but rather "degenerative conditions of a longstanding

nature." *Id.* at 197:2-24.

In the "damages" section of the verdict form, the jury was asked, "was the negligence of the Defendant a substantial factor in causing Plaintiff's injuries?"  The jury answered, "Yes."  Tr. 574:15-17.  Had the jury credited Dr. Haig's testimony that the shoulder condition that prompted Plaintiff to seek treatment with Dr. Bosco was the result of a chronic tear that had existed for five years, and thus rejected Dr. Bosco's testimony that Plaintiff suffered an acute injury, the jury's answer to this question properly would have been "No."  Reading the special verdict interrogatory "in conjunction with the [Court's] charge to the jury," the Court finds no error.  *See Vichare*, 106 F.3d at 466.

Moreover, and contrary to Defendant's argument, the Court has found no support for the proposition that where a plaintiff does not plead aggravation of a prior injury, but there is some (disputed) evidence at trial that Plaintiff's injuries resulted from aggravation of a pre-existing condition, the Court must specifically ask the jury whether any portion of Plaintiff's injury existed prior to the incident.  None of the cases cited by Defendant address this precise scenario. *See* Def.'s Mem. at 14-15.  In *Hoffman v. S.J. Hawk, Inc.*, 258 A.D.2d 618 (2d Dep't 1999), an intermediate state appellate court held that the trial court erred when it failed to submit to the jury two separate interrogatories regarding each injury alleged by the plaintiff—a knee and lower back injury—and whether each was caused by a motor vehicle accident.  *Id.* at 619.  In *Behan*, the same intermediate appellate court held that a trial court erred when it specifically charged the jury that it could award damages for an aggravation of the plaintiff's pre-existing injury—which the Court did not do here—even when aggravation had not been pled.  213 A.D.2d at 440. Finally, in *Ortiz v. Mendolia*, 497 N.Y.S.2d 761 (2d Dep't 1986), a case involving the "no fault insurance threshold of serious physical injury" under New York law, the same intermediate appellate court affirmed the trial court's jury interrogatories and instructions where there were

allegations of an aggravation of a pre-existing injury, but also where the plaintiff was involved in two accidents in less than a year, the defendant was only liable for her injuries that resulted from the first accident, and there was a need to distinguish between the accidents in the interrogatories posed to the jury. *Id.* at 761-62. None of these cases is analogous to the matter currently before this Court.

The Court's instructions made it clear to the jury that Plaintiff was entitled to recover only for those injuries that were caused by Defendant's negligence. *See* Tr. 554:12-21. And to the extent Plaintiff did have certain degenerative conditions prior to the accident, there was no evidence offered at trial that any of Plaintiff's conditions were anything other than latent and asymptomatic before the accident. *See* Tr. 105:6-13 (stating that prior to the accident, Plaintiff had made no complaints to medical providers about his right shoulder). Under these circumstances, where a condition never manifested itself before the accident, Defendant's requested interrogatory was not warranted. *See Kirschoffer v. Van Dyke*, 173 A.D.2d 7, 9 (3d Dep't 1991) ("[T]here was no evidence that the condition was anything but latent and asymptomatic before the accident. In these circumstances, where the condition never manifested itself before the accident, the requested [aggravation of a pre-existing injury] charge was not warranted.").

In sum, the Court finds no basis to conclude that the jury interrogatory and corresponding instructions regarding causation—including the decision to omit the requested interrogatory regarding aggravation of a pre-existing condition—misled or confused the jury or inaccurately framed the issues to be resolved. Accordingly, Defendant's motion for a new trial on this basis is DENIED. *See Cann*, 658 F.2d at 58.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment as a matter of law or, in the

alternative, for a new trial (ECF No. 104) is DENIED.

Dated:  September 29, 2023
        White Plains, New York

                                        **SO ORDERED.**

                                        _____
                                        ANDREW E. KRAUSE
                                        United States Magistrate Judge